## CONNECTICUT MUT. LIFE INS. CO. v. HILLMON.

### (Circuit Court of Appeals, Eighth Circuit. April 3, 1901.)

### No. 1,451.

1. INSURANCE—CONSTRUCTION OF PLEADING—CONSPIRACY—EVIDENCE—DECLARA-
TIONS OF CONSPIRATORS.

To an action brought by a wife upon a policy of insurance on the life
of her husband, which was issued for her sole use and benefit, the insurer
pleaded that her husband, one J. H. Brown, and Levi Baldwin and divers
other persons to the defendant unknown, unlawfully conspiring and in-
tending to defraud the defendant and two other insurance companies,
took out the policy in suit and two policies on the husband's life in other
companies, and thereafter, in pursuance of said fraudulent combination,
did falsely pretend that plaintiff's husband had been killed, and that a
certain dead body produced was his body, whereas plaintiff's husband
was not in fact dead, but was concealing himself for the purpose of con-
summating the alleged conspiracy. *Held*: (1) That the defense so pleaded
was in substance that the plaintiff's husband was not dead, and that
there could be no recovery on the policy for that reason; (2) that the
plea did not charge or allege that the plaintiff ever became a party to the
conspiracy, and that unsworn statements of Baldwin, one of the alleged
conspirators, which were made prior to the issuance of the policy in suit,
were not admissible against the plaintiff in an action by her alone upon
the policy; (3) that, under the pleadings, proof of the existence of the
alleged conspiracy between the plaintiff's husband, Brown, and Baldwin
was only admissible as against the plaintiff for the purpose of strengthen-
ing the probability that plaintiff's husband was not dead, but was conceal-
ing himself; (4) that the declarations of a conspirator are only admissible
against a fellow conspirator when they are made in connection with the
doing of some act in execution of, or in furtherance of, the objects of the
conspiracy, so as to form a part of the res gestæ, and that within this
rule some of the excluded declarations of Baldwin were not admissible
against the plaintiff, even if she was a party to the conspiracy, because
they were merely narrative of past transactions, and not a part of the
res gestæ; (5) that an instruction, asked by the insurer, to the effect that,
if the policy in suit was taken out in pursuance of the alleged conspiracy,
then the plaintiff could not recover, although her husband was in fact
accidentally killed in the manner by her claimed, was properly refused,
because no such defense as that outlined in the instruction was pleaded
in the defendant's answer.

2. SAME—CONCEALMENT—MOTIVE—EVIDENCE OF CRIME.

In a suit on a policy, where the defense was that the insured was not
dead, but hiding, the refusal to permit the defendant to show that the
insured had committed a crime in another state, for the purpose of disclos-
ing a motive for his concealment, was not a material error.

3. SAME—SWORN STATEMENT—DEPOSITION.

An instruction, in a suit on a policy, that a sworn ex parte statement
of a witness, which was in conflict with a deposition of the witness sub-
sequently taken, might be considered, in connection with the deposition,
as evidence of the facts recited in such statement, and "with like effect
as the deposition," was properly refused, since it was the province of the
jury to determine, in the light of the different circumstances under which
the statement was made and the deposition was taken, whether they
would treat the statement "with like effect" and as entitled to the same
credence as the deposition.

4. SAME—CORPSE—IDENTITY—INSTRUCTION.

Where the issue as to whether a body alleged to be that of the insured
was in fact the insured's body was fairly submitted to the jury, in a suit
on a policy the defense to which was that the insured was not dead, an

instruction that there was undisputed evidence that such body had a perfect set of teeth, and, if the jury found that the insured had imperfect teeth, the verdict should be for the defendant, was properly refused, because there was some conflict in the evidence as to the kind of teeth which the deceased had, and because there were many other facts and circumstances which had an immediate bearing upon the issue whether the body produced was that of the insured, and the instruction asked, therefore, singled out one fact bearing on the question of identity, and gave it undue prominence.

5. JURY—PEREMPTORY CHALLENGES—CONSOLIDATED ACTIONS.

Where two actions by the same plaintiff have been consolidated, she was entitled to as many peremptory challenges as if the actions had been tried separately; the same rule also holding good as to the defendants therein, each of which was entitled to three challenges.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Kansas.

This is an action on a policy of life insurance in the sum of $5,000, which was issued March 4, 1879, on the life of John W. Hillmon, for the sole use and benefit of his wife, Sallie E. Hillmon, the plaintiff below, and the defendant in error here. The case has had an eventful history. John W. Hillmon was killed, as it is claimed, on March 17, 1879, by the accidental discharge of a gun at a camp near Medicine Lodge, in a portion of Kansas which was then sparsely settled. The defendant company alleged fraud, and refused to pay the policy, claiming that Hillmon was still living, and that the body produced as being his was the corpse of another man, who had either been murdered by Hillmon, or was a cadaver that had been found by him somewhere on the plains of Southwestern Kansas. The action was brought on July 13, 1880, and has been tried, as we are advised, six times, before as many different judges and juries, resulting in a mistrial on each occasion except the last and a trial which took place in 1888, on both of which occasions the plaintiff below prevailed. The defense to the action that was relied upon principally on the last trial is set forth in the defendant's answer, after a general denial of all of the allegations of the complaint, in the following language: "(2) Said defendant, further answering, says that on and before the 30th day of November, A. D. 1878, one John W. Hillmon, John H. Brown, and Levi Baldwin, and divers other persons, to the defendant unknown, unlawfully and fraudulently confederating, conspiring, contriving, and intending to cheat and defraud this defendant, procured a large amount of insurance to be taken on the life of the said John W. Hillmon, to wit, in the New York Life Insurance Company * * * the sum of ten thousand dollars, in the Mutual Life Insurance Company of New York * * * the sum of ten thousand dollars, and in the Connecticut Mutual Life Insurance Company, by its policy * * * the sum of five thousand dollars. That thereafter, and in pursuance of said conspiracy, and with said intent, said Hillmon, Brown, and Baldwin did falsely and fraudulently pretend and represent unto this defendant and others that said Hillmon was dead, and did, on or about the months of March and April, A. D. 1879, and thereafter, for the purpose of securing the payment of said policies and obtaining the money thereon, falsely and fraudulently claim, pretend, and represent unto this defendant that the said John W. Hillmon was dead, and that a certain dead body which they had procured and had was the dead body of the said John W. Hillmon, whereas said John W. Hillmon was not and is not dead. That since said time the said Hillmon has kept himself concealed, and has and is keeping himself concealed under assumed names, for the purpose of consummating the conspiracy entered into as aforesaid." In addition to the foregoing plea, the answer contained another plea to the effect that the plaintiff had released the cause of action sued upon for a sufficient consideration by a writing which was executed by her on March 4, 1881. To the plea of release the plaintiff replied, in substance, that it was obtained without consideration, by fraud, and the facts constituting the fraud were specifically set forth.

J. E. McKeighan and Edward S. Isham (Buell McKeever, J. W. Green, Shepard Barclay, and M. F. Watts, on the brief), for plaintiff in error.

C. F. Hutchings and L. B. Wheat (John H. Atwood, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

During the progress of the trial, and in its final charge to the jury, the lower court ruled, in substance, that the defendant company had not averred in its answer that Sallie E. Hillmon, the sole beneficiary in the policy, was a party to the alleged conspiracy between John W. Hillmon, John H. Brown, and Levi Baldwin to defraud it and other life insurance companies; that, as her connection with the conspiracy had not been averred, it could not be claimed that she was a party thereto; that the substantive defense which was pleaded in the answer was that Hillmon was not dead, for which reason no liability had accrued on the policy when the suit was filed; that the principal question in the case was whether John W. Hillmon died, as claimed by the plaintiff, in consequence of a gunshot wound inflicted on March 17, 1879; and that the existence of the alleged conspiracy between Hillmon, Brown, and Baldwin was only relevant to strengthen the probability that Hillmon was still living. In various ways exceptions were reserved to these rulings, which will collectively form the first subject for consideration.

It is manifest, we think, from an inspection of the answer, that the trial court was right in holding that the defendant had not pleaded that Mrs. Hillmon was a party to the alleged conspiracy between the three persons last above named, and such seems to have been the view that was entertained at the trial by counsel for the defendant company, for in his opening statement to the jury, after alluding to a remark which had been made by the plaintiff's attorney in his opening address, to the effect that the defendant had never claimed that Mrs. Hillmon was a party to any conspiracy, he said: "What evidence will be deduced on that point is for you gentlemen to determine. What we say on paper is that John W. Hillmon, Levi Baldwin, and John H. Brown did conspire to defraud these insurance companies." This was an admission that the defendant had only charged in its answer that the three parties last named had conspired to defraud the company, and that it had not ventured to commit itself to the statement that Mrs. Hillmon had ever participated therein.

It is further manifest that the trial court was right in holding that the fact that John W. Hillmon was not dead when the action was brought, but was concealing himself somewhere, constituted the substantial defense pleaded in that part of the answer which is quoted above; that the issue tendered by the plea was whether he was dead or alive; and that such issue presented the principal question of fact for the consideration of the jury. It will not be presumed that the second plea contained in the answer was intended to state more than one

defense, for which reason the first paragraph thereof, which alleges, in effect, that Hillmon, Brown, and Baldwin had entered into a conspiracy to defraud certain insurance companies, among others the defendant, cannot be regarded as stating a substantive defense to the plaintiff's cause of action, but that averment must be treated as being merely introductory to the fact afterwards alleged that Hillmon was not dead. As we construe the plea, this latter allegation constitutes the defense on which the pleader intended to rely. We do not perceive, therefore, that the lower court committed any error in the several rulings last aforesaid, or in making the statement that the existence of the conspiracy between the parties named in the plea was not a controlling issue, but at most was only relevant in so far as its existence, if shown, might tend to strengthen the probability that Hillmon was still living. It was not only not alleged that Mrs. Hillmon ever became a party to the conspiracy, but, as we understand the contention of defendant's counsel, the evidence upon which they now rely to show her possible connection with the conspiracy is the fact that she saw the remains of the man who was shot near Medicine Lodge after they had been exhumed and brought back to Lawrence, Kan., where the plaintiff resided. The argument is that, as she saw the remains of the person who had been shot, not immediately after the occurrence, but at Lawrence, Kan., some weeks after the alleged shooting, she probably discovered that they were not the remains of her husband, and that by suing on the policy after she had made such discovery she attempted to avail herself of the fruits of an existing conspiracy, and by so doing became a party thereto. It is obvious, however, that if she did make the supposed discovery, as counsel assume, and if the jury were satisfied of that fact (as they evidently were not), then, as John W. Hillmon was not dead, her right to recover on the policy was defeated by the very evidence— and the only tangible evidence, as it seems—which is now relied upon to show that she adopted the conspiracy, and became a party thereto, after it was partially executed. The trial court was requested, however, to instruct the jury, in substance, that if the alleged conspiracy between Hillmon, Brown, and Baldwin was entered into, and if Mrs. Hillmon was advised of that fact when the alleged body of Hillmon was brought back to Lawrence and she discovered that it was not the body of her husband, and if she thereafter brought the present action, then she adopted the conspiracy; and one complaint which is made by the defendant is that this instruction was not given. For reasons already sufficiently indicated, no error was committed in refusing the request, however correct it may have been as an abstract proposition of law. The crucial question whether the body last above mentioned was the dead body of the plaintiff's husband or that of some other person was submitted to the jury, and the plaintiff's right to recover, so far as the second plea was concerned, was made to turn upon the finding upon that issue. The finding was against the defendant, the jury being satisfied, after listening to the testimony of a multitude of witnesses, that Hillmon was dead, and that the body which was returned to Lawrence was his body. Such being the state of the case, it is obvious, we think, that, as the material issue pre-

sented by the request was submitted, the defendant has no cause to complain of the refusal to submit the issue in the proposed form.

It is urged in behalf of the defendant, and an instruction embodying the proposition was refused by the trial judge, that if the policy in suit was taken out in pursuance of the alleged conspiracy between Hillmon, Brown, and Baldwin, and if Hillmon was afterwards accidentally killed in the manner alleged by the plaintiff, while he was engaged in hunting for the corpse of some other person on the plains of Southwestern Kansas, then there could be no recovery. One good and sufficient reason why such an instruction ought not to have been given is that no such defense was pleaded in the answer. We have already expressed the opinion that the defense made by the second plea was, in substance and legal effect, that Hillmon was not dead, and that the plea cannot be construed as containing dual defenses. Manifestly, it ought not to be construed as containing two defenses which are inconsistent, the one denying that Hillmon was killed on March 17, 1879, and averring that he was still alive; and the other admitting that he was accidentally shot, as alleged. It is not necessary to assert that the two defenses were so utterly irreconcilable that they could not have been embodied in the same answer; but it is clear, we think, that if the defendant intended to rely on the defense which it actually pleaded, and also on the one which was outlined in its instruction, they should have been pleaded separately, so as to advise the plaintiff of the precise issues which she would be compelled to meet. A pleading, however skillfully framed, will never be construed by the courts so as to mislead the unwary, but will be interpreted according to its obvious sense and meaning. This action at the time of the last trial had been pending for more than 20 years, and if the long lapse of time, and the fact that Hillmon had not been unearthed, had led the defendant company to suspect that he was in fact killed at the time and place alleged, then it should have amended its answer, if it desired to avail itself of the defense which is suggested by the refused instruction, namely, that the policy was void because it was taken out originally in pursuance of a fraudulent purpose. We cannot regard its second plea as embodying any such defense, or as having been framed by counsel with a view of presenting any such defense when the answer was filed. Aside from this view of the case, we very much doubt, although it is unnecessary to express a definite opinion on the point, whether the fact that the policy was solicited in pursuance of the alleged conspiracy, and with intent at some time in the future to make a fraudulent claim thereunder, would constitute a defense to the action brought by Mrs. Hillmon, who was not alleged to have been a party to the conspiracy when the policy was solicited, or to have been in any wise concerned therein. The contract of insurance was founded upon a valuable consideration. It was not an unlawful contract. Mrs. Hillmon had a well-recognized insurable interest in the insured's life, and it is not claimed that the policy was issued in consequence of any false or fraudulent representations. Under the circumstances it is not apparent that a mere intention on the part of John W. Hillmon to make a fraudulent claim thereunder, which was never in fact made, could impair the beneficiary's right of

recovery. But, be this as it may, the instruction above referred to was properly refused.

This brings us to a consideration of some of the exceptions to the admission and exclusion of testimony. The defendant company offered to show by four witnesses, namely, Phillips, Blythe, Crew, and Carr, certain statements which had been made to them by Baldwin at various times between the fall of 1878 and the spring of 1879, when the policy in suit was issued. One of these offers was a statement by Baldwin to Crew that he had borrowed money from a certain bank to pay Hillmon's life insurance premium; another was a statement by Baldwin to Carr that "he and Hillmon had a scheme under brogue," and, if it worked out "he [Baldwin] was all right"; another was a conversation between Baldwin and Phillips, in which Baldwin inquired, in substance, either in jest or in earnest, if it would not be a good scheme to get insurance on one's life in a large sum, and go south, and get the body of a greaser, and palm it off as your own body; and another was a request made by Baldwin to Blythe to recommend to him some good insurance companies, as he had a friend who wanted to take out some insurance. These several statements were excluded, and, as we think, properly excluded. Even when there is sufficient evidence in a case to warrant a finding that a conspiracy was entered into by certain of the parties to the action to do some wrongful act, it does not follow that any and every declaration which may have been made by one of the conspirators is admissible even as against his associates in the scheme. Declarations made by one conspirator are not admissible against the others to prove the existence of the conspiracy if such statements are not made in the others' presence. Neither are mere admissions or narrations of what has already taken place admissible, which have no tendency to promote the objects of the conspiracy; the rule being that declarations by individual conspirators, to be admissible against their associates, must be made in furtherance of the common design while it is under way or in process of execution, so as to form properly a part of the res gestæ. State v. Johnson, 40 Kan. 266, 268, 19 Pac. 749; People v. McQuade, 110 N. Y. 284, 307, 18 N. E. 156; People v. Kief, 126 N. Y. 661, 662, 27 N. E. 556; 3 Greenl. Ev. (15th Ed.) § 94, and cases there cited. Tested by this rule, some of the statements mentioned above, particularly those to Crew and Carr, were merely narrative of past transactions, and not admissible for that reason. But, for other reasons as well, the testimony was not admissible against Mrs. Hillmon, who was the sole plaintiff. It was not alleged by the defendant company that she ever became a party to the alleged combination to defraud certain insurance companies, either by original participation in the scheme or by subsequently adopting it, and, in the absence of any such averment, we are of opinion that it would have been erroneous to have admitted as against her such casual declarations and inquiries of the man Baldwin as are above described. Under the issues which were presented by the pleadings, we think that the trial court went quite far enough in permitting the existence of the alleged conspiracy between Hillmon, Brown, and Baldwin to be shown for the purpose of strengthening the probability that Hillmon was not in

fact dead, but was concealing himself. The existence of the alleged conspiracy was a single isolated fact which the jury might have regarded as having some probative force in solving the real issue in the case as to whether Hillmon was accidentally killed at the time and place alleged in the complaint.

Further complaint is made by the defendant because the trial court refused to permit it to show by certain oral testimony and by reading one section of the Criminal Code of the state of Texas that in the early part of the year 1878 Hillmon had committed an offense against the laws of the state of Texas by removing out of that state certain personal property which he had bought and mortgaged, with an intent to defraud the mortgagee. The admissibility of this evidence is urged upon the ground that, if admitted, it would have disclosed a motive for Hillmon's "disappearance and continued absence." We are of opinion, however, that the evidence was unnecessary for this purpose, as a sufficient motive was disclosed for his disappearance and continued absence; and no further evidence in that behalf was needed, if the defendant's theory of the case was right, that Hillmon was not dead when the suit was brought, but was merely hiding, to enable his wife to collect certain insurance upon his life. The trial court did permit the defendant to show the purchase of the personal property in question, and the reasons given by Hillmon for its purchase, and the fact that it had been removed, and not paid for, and that the property was subsequently sold; this latter testimony being admitted, as we infer, upon the theory that the defendant had the right to trace all of Hillmon's movements, and to exploit his actions for some months before the policy in suit was taken out, for the light it might possibly shed on his subsequent conduct. The introduction of the criminal statute of Texas and the other evidence was unnecessary to establish a motive for Hillmon's disappearance, and the exclusion thereof cannot be regarded as a material error.

A further complaint is made because the trial judge said in his charge with reference to a written statement that had been made by John H. Brown, one of the alleged conspirators, whose deposition had also been taken and read by the plaintiff, that said statement was "not affirmative evidence of the truth of any matter therein contained, and  *  *  *  should not be considered  *  *  *  except as affecting the credibility of the evidence of said Brown given in his deposition." The statement of Brown which was thus mentioned and his deposition were entirely irreconcilable as respects the question whether Hillmon was killed on March 17, 1879, or whether the person killed was another man. The direction which the court gave to consider Brown's statement as affecting the credence which should be given to his deposition was, in effect, therefore, a direction to the jury to determine on which occasion Brown had told the truth,—whether when his deposition was taken or when an ex parte statement was obtained from him by a lawyer by the name of Buchan, who seems to have been in the employ of the defendant company, or at least to have been acting in its behalf and in its interest. We are relieved, however, of the necessity of deciding whether there was anything misleading in the excerpt from the charge which has been quoted above, by the fact

that no exception was taken thereto, and we may reasonably infer from the fact that no exception was taken that the direction given by the court that Brown's sworn statement to the defendant's attorney was not "affirmative evidence," etc., was not deemed to be of much importance, or as liable to mislead, when the case was submitted to the jury.

In behalf of the defendant company an instruction was asked, which was refused, to the effect that Brown's sworn statement, which was in conflict with his deposition, might "be considered, in connection with the deposition, * * * as evidence of the facts therein stated, * * * with like effect as the deposition of John H. Brown, and may also be considered as affecting the credibility of said Brown." We think that this instruction was faulty, and fully as liable to mislead as the court's charge on the subject, inasmuch as it required the jury to attach as much weight to the one document as to the other, irrespective of the circumstances under which the two documents had been obtained. There was evidence in the case which tended to show that the ex parte statement had been obtained from Brown on September 4, 1879, by much persuasion and by covert threats; and by some unprofessional conduct on the part of the attorney who had obtained it; and that it had been used to induce the plaintiff to release her cause of action upon the policy in suit without consideration. On the other hand, Brown's deposition had been taken at a later date, in the usual way, and he had been cross-examined by the defendant company at great length. In his deposition he admitted having made the statement, and asserted that the statements therein contained to the effect that Hillmon was not dead, and that another man had been killed, were each false. He also explained the reasons and the influences which had been brought to bear upon him to induce him to make the false statement. It was the province of the jury to decide, in view of all the circumstances tending to show how the ex parte statement had been obtained, and the use that had been made of the same, and in view of the fact that it had been introduced into the case by the plaintiff, not as credible testimony, but merely for the purpose of discrediting it, whether they would treat it "with like effect," or consider it as entitled to the same credence as Brown's deposition. If the court had given the defendant's instruction, it might well be said, we think, that it had invaded the province of the jury.

Complaint is made in behalf of the defendant company because the trial court did not give an instruction to the effect that proof had been offered, which had not been disputed, that the corpse brought back from Medicine Lodge to Lawrence, Kan., had a perfect set of teeth, and that the jury should return a verdict for the defendant if they found from a preponderance of evidence that Hillmon in his lifetime had lost a tooth, or had imperfect teeth. This instruction was in the nature of a commentary on one feature of the evidence, which the court, in our judgment, was not required to make, inasmuch as it appears that there was considerable conflict in the evidence as to the kind of teeth which Hillmon had. Some persons, as it would seem from the testimony, might regard him as having good teeth, and some as having teeth that were imperfect. Besides, this instruction singled out one fact bearing upon the question whether the corpse that

was brought back to Lawrence was Hillmon's body, and gave it undue prominence, inasmuch as there were many other facts and circumstances in evidence which had an immediate bearing on the same question, and might be regarded as very persuasive evidence that the body returned was Hillmon's dead body. This issue as to whether it was Hillmon's body, or the body of some other person, was fairly submitted to the jury by the court's charge, and we do not perceive that a reversible error was committed in the refusal of the defendant's instruction.

Another contention on the part of the defendant company is that the trial court erred in permitting the plaintiff to have six peremptory challenges when the jury was impaneled. With reference to this point it is to be observed that at the time of the last trial there were two actions pending in behalf of the plaintiff upon policies of insurance on the life of her husband, one against the present defendant and the other against the Mutual Life Insurance Company of New York, both of which actions involved the same issue as to whether her husband was dead or alive. Originally, there had been three such actions, one against the New York Life Insurance Company, but the latter action had been compromised prior to the last trial. The trial judge ruled that, if the two actions which remained to be tried had not already been consolidated for trial under existing orders, he would order their consolidation, as the issue in each case was the same, and the trial thereof would be exceedingly lengthy. It goes without saying that such order of consolidation was within the discretionary power of the trial judge, and we have no doubt that in the present instance the power was wisely exercised. At all events, it affords no ground for a successful complaint on writ of error. Insurance Co. v. Hillmon, 145 U. S. 285, 293, 12 Sup. Ct. 909, 36 L. Ed. 706. It is urged, however, by learned counsel for the defendant, that, as the two actions were consolidated for trial, the plaintiff was only entitled to three peremptory challenges. It is to be observed that when this case was before the supreme court, and was under consideration in the case last cited (145 U. S. 285, 12 Sup. Ct. 909, 36 L. Ed. 706), that court held that, when actions are consolidated, such an order does not operate to deprive either defendant of the right to challenge as many jurors peremptorily as he would have been entitled to challenge if the cases had been tried separately; and the former judgment in favor of the plaintiff was reversed because each defendant to the consolidated cause was not allowed three peremptory challenges. If this rule is applied to the defendants,—that is to say, if consolidated causes are treated separately, so far as the defendants are concerned, for the purpose of preserving to them their respective rights of challenge,— we perceive no reason why the same rule should not be applied to the plaintiff so as to entitle her to the same number of challenges which she would have been entitled to had the cases been tried separately. The learned judge of the trial court acted in accordance with this view, and in so doing we think that he committed no error. It certainly does not appear that the defendant company was prejudiced by permitting the plaintiff to have six peremptory challenges, and the defendants three challenges each, or six in all.

There are some other assignments of error which have been dis-

cussed by counsel for the defendant company, all of which have been carefully considered, and found to be without merit. None of them, we think, are entitled to as much consideration as the various assignments already considered. This case has been pending, as heretofore stated, for more than 24 years, and it would be a matter of great regret, and a reproach to our method of administering justice, if, after six laborious and lengthy trials, an error had crept into the record of such consequence as to require a reversal. We are satisfied that no such error was committed, and it is accordingly ordered that the judgment below be affirmed.

SANBORN, Circuit Judge (dissenting). Within six months after the alleged death of Hillmon, John H. Brown, who was with Hillmon when the person, whoever he was, whose body was claimed to be that of Hillmon, was killed, made an affidavit that this body was not Hillmon's; that it was the corpse of another man, whom Hillmon had killed; that Hillmon was still living; and that this cadaver was produced to enable the plaintiff below to collect the $25,000 insurance on Hillmon's life pursuant to a conspiracy which Baldwin, Hillmon, and Brown had formed to accomplish that end. On the trial of this action the plaintiff offered this affidavit in evidence, and it was received without objection. She also offered in evidence Brown's deposition, taken at a later date than the affidavit, in which he testified that Hillmon was dead, and that it was his corpse, and not that of another person, which was produced by him and Baldwin in March, 1879. At the close of the trial, counsel for the defendant requested the court to charge the jury that Brown's affidavit might "be considered, in connection with the deposition of John H. Brown, as evidence of the facts therein stated under oath, against the plaintiff, with like effect as the deposition of John H. Brown; and may also be considered as affecting the credibility of said Brown as a witness." To this request the court responded in its charge in these words: "The oral declarations of said Brown not under oath, and the statement signed and sworn to by him, are not affirmative evidence of the truth of any matter therein contained or mentioned, and they should not be considered by you except as affecting the credibility of the evidence of the said Brown in his deposition," and refused to grant the request. The defendant excepted to the refusal, but did not except to the charge. A perusal of this brief statement of the record upon this subject will not, it seems to me, raise a doubt in the mind of any reader that the question presented by the request, that ruled by the charge, and that decided by the refusal to grant the request was the single question whether or not the affidavit of Brown was any evidence of the facts it recited. This, it seems to me, was the only question intended to be raised by the request, was the question which the charge clearly shows that the court understood was presented, and was the only question ruled either by the refusal of the request or by the terms of the charge upon this subject. If this view is correct, the exception to the refusal to grant the request fairly presents the ruling upon this issue. The argument that the question whether or not the affidavit was evidence of the facts it recited was not presented because the re-

quest asserted that the affidavit was evidence with like effect as the deposition seems to me to be too technical and critical. The meaning of the words "with like effect" in this request was that the affidavit was evidence of the facts which it recited, subject to the right of the jury to question, believe, or disbelieve its statements in the same way that the deposition was evidence of the facts it related subject to the same right of the jury, and not that the jury must believe the affidavit just as much as they should believe the deposition. The court below had this understanding of the issue which this request presented. It clearly understood that it was an invitation to charge that the affidavit was evidence not only of the lack of credibility of Brown, but also of the facts which it recited, and when it came to rule upon the issue it refused the request, and directly contradicted the declaration that the affidavit was evidence of the facts it related, while it conceded that it might be considered upon the question of the credibility of the witness. The request and the charge seem to me to fairly present one, and only one, question, which was clearly understood and directly ruled by the court both in its charge and in its refusal to grant the request,—the question whether or not the affidavit was evidence of the facts it recited. In the light of the charge, which contradicted the terms of the request, the refusal of the request ruled this question as directly as the charge itself, and for that reason the exception to the refusal fairly challenged the error, and entitled the defendant to a review of the ruling.

When we turn to a consideration of the correctness of the ruling itself, no issue is presented for argument or consideration. Forms and rules are prescribed by statutes and decisions for the taking and production of testimony which give to the opposing party the opportunity and right of cross-examination and the security of an oath. But this opportunity, this right, and this security may be waived by stipulation for, consent to, or silent acquiescence in the introduction of testimony, and when this is done the statement admitted becomes as competent evidence of the facts it details, as though every formality had been complied with. Much more does the offer and introduction of such evidence have this effect, for he who introduces testimony is ordinarily in some sense sponsor for its character. The plaintiff introduced this affidavit in evidence, and the defendant consented to its admission. The plaintiff was thereby estopped from claiming that it was not evidence of the facts it recited, because the defendant relied, and had the right to rely, upon it for that purpose, and because the plaintiff, having introduced it, was not permitted to take the inconsistent position that it was not competent evidence of the facts it related. Walton v. Railroad Co., 56 Fed. 1006, 1008, 6 C. C. A. 223, 225, 12 U. S. App. 511, 513; National Loan & Investment Co. v. Rockland Co., 94 Fed. 335, 337, 36 C. C. A. 370, 372. The affidavit was persuasive telling evidence upon the crucial questions in the case, upon the identity of the corpse, and upon the conspiracy to defraud the defendant, and yet the company was deprived of its benefit by this ruling of the court: This error is so plain and glaring, and it necessarily deprived the defendant of such important testimony, that, in my opinion, it ought not to be disregarded.

2. Sufficient evidence of a conspiracy between Baldwin, Hillmon, and Brown to obtain the insurance upon the life of Hillmon, and to produce the body of some other person, and collect the insurance, was produced at the trial to induce the court to submit this evidence to the jury upon the question whether or not the body produced by Brown and Baldwin was that of Hillmon. In this state of the case the testimony of Phillips that Baldwin inquired of him about insurance, how long it would take a dead body to decompose, and said that it would be a good scheme to get insurance, and go down south and get the body of a greaser, and collect it; the testimony of Blythe, a lawyer, that Baldwin told him that a friend of his wanted to get insurance, and inquired of him what companies were good; the testimony of Crew that in February or March, 1879, Baldwin said that his indebtedness to the bank had arisen because he had furnished money to pay the premium on Hillmon's insurance, and that he expected to have $10,000 of the insurance money; and the testimony of Carr that about March 10, 1879, Baldwin told him that he and Hillmon had a scheme under "brogue," and that, if it worked out right, he was all right,—were offered in evidence. Several of these conversations were had after the insurance on Hillmon's life had been secured, and before the killing on March 17, 1879. They were had while Baldwin was engaged in carrying on and working out the conspiracy. All this testimony was rejected by the court. In my opinion, this testimony detailed verbal acts and declarations of Baldwin, one of the conspirators, while they were engaged in executing the conspiracy, and upon that ground it was competent evidence essential to the maintenance of the case of the defendant. Drake v. Stewart, 76 Fed. 140, 22 C. C. A. 104, 40 U. S. App. 173; Smith v. Society, 123 N. Y. 85, 25 N. E. 197, 9 L. R. A. 616; Insurance Co. v. Hillmon, 145 U. S. 285, 296, 298, 12 Sup. Ct. 909, 36 L. Ed. 706. The contention that this testimony constituted no evidence against the plaintiff because she was not alleged to be a party to the conspiracy does not seem to me to be sound. There was sufficient evidence of a conspiracy to obtain this policy to defraud the company to warrant the court in submitting this testimony to the jury. If the conspiracy was formed, and the policy was obtained by John W. Hillmon, one of the conspirators, in pursuance of a plan that he formed to defraud the company, any assignee or beneficiary of the policy necessarily took it subject to its original defect, and any evidence competent to show that it was originally obtained by fraud must be competent against any one who holds it, for the policy still has that defect in the hands of the assignee or beneficiary. Insurance Co. v. Minch, 53 N. Y. 144; Carpenter v. Insurance Co., 1 Story, 57, Fed. Cas. No. 2,428; Burruss v. Association (Va.) 32 S. E. 49; 1 Bid. Ins. 448, 449. For these reasons the judgment below should, in my opinion, be reversed, and the case should be remanded to the court below for another trial.