## UNITED VERDE COPPER CO. v. JORDAN et al. *

(Circuit Court of Appeals, Ninth Circuit. August 2, 1926. Rehearing Denied September 7, 1926.)

No. 4735.

**1. Nuisance ⊜48.**

Complaint against copper company, alleging damage to crops and trees from smoke and fumes from smelter, held to state cause of action.

**2. Assignments ⊜24(1).**

Cause of action against copper company for damage to crops and trees from smoke and fumes from smelter held assignable, in view of Civ. Code Ariz. par. 398, and page 447, par. 968.

**3. Jury ⊜136(3).**

Where plaintiffs' actions against two companies were consolidated for trial, plaintiffs and each defendant held entitled to same number of peremptory challenges, under Judicial Code, § 287, as though cases had been tried separately (Comp. St. § 1264).

**4. Nuisance ⊜53.**

Where smoke and fumes from two smelters intermingled and injured plaintiff's crops, liability of owner of one smelter held for jury.

**5. Nuisance ⊜9.**

Where smoke and fumes from two smelters intermingled and injured plaintiff's crops, own-

*Certiorari denied 47 S. Ct. —, 71 L. Ed. —.

er of one smelter *held* liable only for proportion of damage resulting from its smoke.

**6. Nuisance ⬤⟶53.**

Evidence *held* to take to jury question of amount of damage to trees, vines, and hedges from smoke and fumes from smelter.

**7. Trial ⬤⟶194(4)—Statement to jury that defendant admitted that smelter smoke had injured crop held not error, where it offered no testimony to support its denial.**

In action for damage to crops by smoke from smelter, statement to jury that defendant admitted that smoke had injured crop *held* not error in view of plaintiff's evidence, where defendant offered no testimony to support its denial.

**8. Nuisance ⬤⟶54—Charge that plaintiffs must prove damage by smelter smoke, with such reasonable certainty as accessible proof would permit, and by greater weight of evidence, held proper.**

In action for damage to crops and trees by smoke from smelter, in which defendant introduced no evidence, charge that plaintiffs must prove any damage beyond nominal damages with such reasonable certainty as proof accessible to them would permit *held* proper, where it also required proof "with reasonable certainty and by the greater weight of the evidence."

**9. Trial ⬤⟶246—In action against owners of smelters, charge that society would eventually pay any loss of defendant, if error, held cured, where court explained that jury were not to be influenced thereby.**

In action against owners of smelters, charge that, when defendants paid it went into price of produce and society eventually stood loss, if error, *held* cured, where court, on exception being taken, immediately said jury were not to be influenced thereby.

**10. Trial ⬤⟶296(2)—Charge that smelter smoke could be relieved of injurious qualities held not error, in view of charge that jury were not interested in content of smoke.**

In action for damage to crops from smelter smoke, charge that smoke could be relieved of injurious qualities *held* not error where it was shown that smoke damaged crop, in view of charge that jury was not interested in content of smoke.

**11. Appeal and error ⬤⟶1068(4)—Charge that jury could encroach little on defendant in determining damage to crops from smelter smoke held not error, where verdict was not excessive.**

In action for damage to crops by smelter smoke, charge that, while plaintiff was entitled only to damages actually suffered, jury could encroach a little on defendant in "twilight zone," in which exact amount of damage was difficult to determine, *held* not error, where verdict was not excessive.

In Error to the District Court of the United States for the District of Arizona.

Action by W. A. Jordan and others, copartners doing business under the firm name of W. A. Jordan & Sons, against the United Verde Copper Company. Judgment f[ ]plaintiffs (9 F.[2d] 144), and defenda[ ]brings error. Affirmed.

Anderson, Gale & Miller, of Prescott[ ]Ariz., and Rice & Mathews, of Globe, Ariz.[ ]for plaintiff in error.

Robert E. Morrison and Louis H. Bunte[ ]both of Prescott, Ariz., for defendants in error.

Before GILBERT, HUNT, and RUD[ ]KIN, Circuit Judges.

HUNT, Circuit Judge. Defendants in error, called plaintiffs, recovered verdict and judgment for damages to crops, trees, and vines of plaintiffs and their assignors, caused by smoke, fumes, and gases from the smelter of plaintiff in error, called defendant. To review the judgment this writ of error was brought.

In the first of seven counts in the complaint, plaintiffs sued for damages to their own crops, trees, and hedges, while in the other six counts they sued as assignees for damages done to the crops of other persons, General demurrer to the complaint was overruled, and defendant answered generally, denying the allegations of the complaint.

For the purposes of trial the action was consolidated with another (No. 4746, 14 F. [2d] 304), brought by these same plaintiffs against the United Verde Extension Mining Company. At the close of the evidence introduced by plaintiffs the court denied defendant's motion for a directed verdict. Defendant introduced no evidence. The jury found in favor of the plaintiffs on all counts, except the seventh.

The complaint alleged that during 1922 and 1923 plaintiffs farmed certain properties situate about 4½ miles from defendant's smelter in Arizona; that while the crops were growing, and particularly in June, July, and August of 1922 and 1923, defendant, in the operation of its smelter, daily discharged in the air great quantities of poisonous gases, smoke, fumes, and flue dust, containing quantities of sulphur and other dangerous and poisonous materials, the exact contents of which were unknown to plaintiffs, which were carried by the winds over and upon the premises described, and upon plaintiffs' growing crops and fruit and ornamental trees, and seared, burned, injured, and destroyed the same. The last six counts are similar to the first, except that the causes of action stated therein are alleged to have accrued to other landowners in respect to other lands, and other crops and trees and vines,

and are alleged to have been assigned to plaintiffs.

The principal questions argued are: (1) Whether causes of action were stated in the complaint; (2) whether plaintiffs could exercise six peremptory challenges and defendant but three in the selection of the jury; (3) whether verdict should have been directed in favor of defendant; (4) whether correct rules as to damages were given; (5) whether certain instructions given were correct and whether certain requests were properly refused; (6) whether certain comments made by the judge in his charge were prejudicial to the rights of defendant.

[1] As to the first point, no one at this day will contend that a smelter is in itself a nuisance, or that the business of smelting ore is unlawful. But the general acceptance of those propositions is with the understanding that the right to maintain and operate a smelter is subordinate to the general rule contained in the maxim "Sic utere tuo ut alienum non lædas," a maxim which the Supreme Court has said is as fully recognized in the jurisprudence of Arizona as it is elsewhere. Arizona Copper Co. v. Gillespie, 230 U. S. 46, 33 S. Ct. 1004, 57 L. Ed. 1384; Camfield v. United States, 167 U. S. 518, 17 S. Ct. 864, 42 L. Ed. 260. The business itself may not be the determining factor, but may become so as to persons who are specially injured by its being carried on. For example, one may erect a cement mill in the immediate vicinity of an orange grove, yet if, in the operation of the mill, cement dust escapes and is blown in quantities upon adjacent property, and seriously injures the trees thereon, thereby impairing the value of the lands, he cannot avoid liability for damages done. California Orange Co. v. Riverside Portland Cement Co., 50 Cal. App. 522, 195 P. 694; Bigbee, etc., Co. v. Scott, 3 Ala. App. 333, 56 So. 834. Thus, irrespective of whether the smelter was well or negligently operated, a cause of action was pleaded and the demurrer was properly overruled Pollock on Torts, p. 417; Soltau v. De Held, 2 Sim. (N. S.) 133.

[2] The next inquiry is whether plaintiffs, as assignees, could recover under the counts alleging damages to the properties of others. We think they could. In Deatsch v. Fairfield (Ariz.) 233 P. 887, 38 A. L. R. 651, the court said that the question of survivorship of a chose in action is the test of assignability. Under paragraph 398, Arizona Civil Code, suits for recovery of damages or for any injury or damage done to lands may be instituted by executors, administrators, or guardians in like manner as they could have been by their testators or intestates. Paragraph 968, p. 447, Arizona Civil Code, provides that executors or administrators may maintain action for trespass committed on real estate of the decedent in his lifetime. Our opinion is that by the statutes of the state a cause of action which arises from a tort to real property or injuries to a decedent's estate, by which the value of the estate is lessened, survives, and that the general rule that such cause of action is capable of assignment obtains. 2 R. C. L. 613; Ingersoll v. Courley, 72 Wash. 462, 130 P. 743; Bultman v. Atlantic Coast R. Co., 103 S. C. 512, 88 S. E. 279.

[3] Was it error to permit plaintiffs, in selecting a jury, to exercise six peremptory challenges, and to refuse to permit defendant to exercise more than three? Section 287 of the Judicial Code (Comp. St. § 1264) provides that each party shall be entitled to three peremptory challenges, and in all cases where there are several defendants or several plaintiffs the parties on each side shall be deemed a single party for the purposes of all challenges under the section. It is to be remembered that this and another case brought by the same plaintiffs were tried together, and that separate verdicts were required. Under such a state of facts, it has been held that plaintiffs and defendants are each entitled to the same number of challenges as they would have been, had the cases been tried separately. Betts v. United States, 132 F. 228, 65 C. C. A. 452; Conn. Mutual Life Ins. Co. v. Hillmon, 107 F. 834, 46 C. C. A. 668; Butler v. Evening Post Pub. Co., 148 F. 821, 78 C. C. A. 511; Davis v. Jessup (C. C. A.) 2 F.(2d) 433.

Counsel argue that the decisions cited misconceive the view of the Court in Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285, 12 S. Ct. 909, 36 L. Ed. 706, and that in Conn. Mutual Life Ins. Co. v. Hillmon, 188 U. S. 208, 23 S. Ct. 294, 47 L. Ed. 446, the Supreme Court construed its former decision as holding no more than that the right of a single party to three peremptory challenges is neither diminished nor enlarged by consolidation of two or more actions. We do not understand the opinion as sustaining defendant's position. The concession made in the discussion by Justice Brown, following defendant's argument in that case, was not by way of opinion in conflict with the holding of the Circuit Court of Appeals, but merely by way of assumption for the purposes of argument. In Betts v. United States, supra, the Circuit Court of Appeals regarded the decision in Mutual Life Insur-

ance Co. v. Hillmon, supra, as directly holding that no defendant could be deprived of the right to challenge jurors as a result of an order that causes should be tried together. The latest decision to which we have been referred is Davis v. Jessup, supra, where the Circuit Court of Appeals for the Sixth Circuit has taken the same view and puts what we think is the right construction upon the two decisions in Mutual Life Ins. Co. v. Hillmon, supra.

[4] Defendant urges that verdict should have been directed in its favor on the ground that the evidence failed to show negligence in the operation of the smelter, or that if there was any damage it was caused in whole or in part by the smoke and fumes from the United Verde Extension Company smelter, and because it was not shown what portion of such damage was caused by smoke or fumes from defendant's smelter. The testimony is wholly convincing that the smoke and fumes from the two smelters intermingled, and went over and upon the lands of plaintiffs, and damaged their crops and trees. How could plaintiffs, farmers, be reasonably expected to say with anything like precision what the contents of the smoke were, or what proportion of damage was done by smoke from one smelter as distinguished from the other? They made out a very strong prima facie case when they proved that there were two smelters, the locations of which were about a mile and a half and four miles, respectively, from plaintiffs' lands; that defendant's smelter had two stacks, and the other smelter one; that the smoke smelled and tasted strongly of sulphur; that the smoke intermingled, as it came from the smelters and spread over the farms; that it often remained for hours over their lands; that after the smoke lifted the growing vegetation looked discolored and withered, and much of it never recovered.

[5] The theory of the plaintiffs was, not that the two smelting companies acted in concert and were joint tort-feasors, but that the damage was caused by each separately and that each was liable for whatever damage was done by its smelter. Of course, defendant United Verde Copper Company became liable only for such proportion of the total damage resulting from the commingled smoke sent out from the two smelters as was caused by its own smelter (U. S. Smelting Co. v. Sisam, 191 F. 293, 112 C. C. A. 37, 37 L. R. A. [N. S.] 976), and the court so charged the jury. The fact that the effects of their several acts were produced at the same time and over the same farms does not materially bear upon the point, even though it made more difficult the task of the jury in determination of how much of the total damage was caused by the defendant. Sellick v. Hall, 47 Conn. 260; Watson v. Colusa, etc., Co., 31 Mont. 513, 79 P. 14.

[6] This brings us to the assignment based upon the refusal of the court to direct a verdict in favor of the defendant as to all damages claimed on account of fruit trees, grape vines, ornamental trees, and hedges. The argument here is that such trees, vines, and hedges are part of the realty, and that as the measure of damages for their destruction or injury is the difference in the market value of the lands on which they grew before and after such destruction or injury, and as there is no opinion evidence as to such difference in value, recovery could not be had. We cannot accept the premise of lack of evidence. It is true the evidence was that the lands described in the complaint had no market value, solely for the reason that the smelters were so close to the land and were so operated that farming could not be carried on profitably; but there was positive evidence that, with the orchards in good bearing condition, the lands would be worth from $1,500 to $1,800 per acre.

The court instructed that, in arriving at a fair measure of damages for the fruit trees, the jury could consider the value of the trees themselves, the condition they were in, probable markets for the fruit, and the value of the trees before and after the injury, or that another method might be considered, namely, the value of the land with the trees on it uninjured, and the value with the trees on it after they were damaged. As there was evidence bearing upon both bases of value, the court said it was for the jury to conclude how much, if any, the trees were damaged by the smelter smoke. Louisville, etc., Co. v. Beeler, 126 Ky. 328, 103 S. W. 300, 11 L. R. A. (N. S.) 930, 128 Am. St. Rep. 291, 15 Ann. Cas. 913; Doak v. Mammoth Copper Co. (C. C.) 192 F. 748.

[7] Error is assigned upon a statement by the court to the jury that the defendant admitted that the smelter smoke had injured some of the crops on the plaintiffs' farms during the years specified in the complaint, and that its smoke was injurious. It is said that the defendant never made any such admissions. But as defendant offered no testimony, and made no effort to support its pleading, denying that damage was done by the smoke, the only legal construction that could be put upon the evidence was that the smoke had, to some extent, at least, damaged

the crops on the premises. Furthermore, one of the plaintiffs testified that, in a conversation with the general manager of the defendant company in respect to a "burn" that occurred in June, 1923, he invited the general manager to come and observe the conditions for himself, "to see what we are up against"; that the general manager replied he could not go himself, but that he would send representatives; that to such suggestion witness replied that he wanted the heads of the company. Witness also said that the manager did not go, but sent a representative; that the manager said that the company did not deny that the plaintiffs were being injured, and inquired how much damage was done.

[8] Another assignment is addressed to part of the charge wherein the court said that, in order to recover more than nominal damages, plaintiffs were required to prove the amount of such damages with such reasonable certainty as the character of the case and the variety of proof accessible to them would permit. The criticism is best answered by a quotation from the charge, wherein, after saying the plaintiffs were entitled to recover nominal damages, the court added that whatever, in addition to that, could be recovered, must be proved by plaintiffs "by the greater weight of the evidence in the judgment of the jury," and continued: "The burden is on the plaintiffs to make that proof. They may have the best cause of action in the world in any case, and allege it properly; but when they go before a jury, * * * if they fail to prove their case, why they must go out of court with a verdict against them, and that is justice. * * * A man who alleges he has been wronged must prove it, and must prove the amount as reasonably certain as the character of the case and the variety of proof that is accessible to him will permit him to do so."

Again, the court, after submitting the question whether the greater part of the damage done was caused by the smelter smoke, or by insects, frost, lack of proper irrigation, and the like, stated that, while the law does not require absolutely certain proof to a cent as to damages, plaintiffs must, however, prove "damages, and prove that the damages claimed were caused by smelter smoke to a substantial degree, with reasonable certainty and by the greater weight of the evidence, before you can award him any verdict beyond a nominal verdict." We see no error in those statements. American Smelting & Ref. Co. v. Riverside, etc., Co., 236 F. 510, 149 C. C. A. 562.

[9] Another exception to the charge is based upon that portion wherein the court, after saying that if, to any extent, the smoke from the smelters had damaged the crops or trees of plaintiffs, recovery could be had, added, in reference to defendant in this and the companion case: "They make their profits, and, when they pay, the theory of the law is that it goes into the price of the product, and society will generally stand the loss after all." Had the injection of this irrelevant economic theory been allowed to remain without qualification, there would be much force in the defendant's argument that it was in effect a statement that any damages which they might award plaintiffs would be paid, not by defendant, but by society generally, and that it was therefore a matter of little concern to defendants whether the amount awarded to plaintiffs was large or small, and that, "since defendant had no interest, and therefore no rights in the matter, the jury could be as generous as they liked in awarding damages to plaintiffs, and not have any fear of doing any injustice to defendant."

But reference to the transcript in the case against the United Verde Extension Mining Company shows that, when counsel for defendant therein excepted to the above-quoted comment, the judge at once said the jury were not to be influenced by sympathy for either party, and added: "You are sitting in the box under oath not to render a verdict in accordance with sympathy or prejudice, but in accordance with law and the evidence." And further: "I just want to state that, when the court stated that, when a defendant pays such damages, it passes them on to the ultimate consumer, of course that is not to influence you in your decision. If these plaintiffs have not proven their damages, of course you are not to award any against these defendants simply because they may recover from the consumers of copper. That was not the purpose at all." As the comment was made in the charge, which was single in the two cases tried, we think the quick disavowal of any purpose to influence the decision of the jury, coupled with the charge that, if plaintiffs had not proved damages, they could not recover because defendants might recover from consumers, cured any possible error there was in the comment.

[10] Exception was also saved to the remarks of the court, included in the charge, that in the advance of the science of smelting it had been found that smoke could be relieved of a large part of its injurious qualities, sometimes by construction of flues,

sometimes by the use of bag houses with gunny sacking, or by other means that were sometimes adopted. It is urged that such comments in effect invited a verdict against the defendant, upon the ground that it was guilty of negligence in not equipping its smelter with devices and appliances referred to in the instructions, by suggesting that the injuries complained of were not inflicted as unavoidable incidents to the business of smelting, but as the consequence of the ruthless disregard of the rights of others. Inasmuch as the only possible inference from the evidence was that the smoke did damage the lands and crops, whether defendant used appliances to alleviate the damage was outside the case, and we cannot see that mention of the matter could have influenced the conclusion of the jury.

Moreover, the court, after its brief discourse upon the methods of controlling smelter fumes, added: "As the court told you before, so far as the content of the smoke is concerned, really you are not interested in it, because I have told you that they both, to a legal extent, admit that it is injurious. With the content you are not interested; but, so far as the amount of injury that the smoke would do, these defendants could well have told you. It is true they were not obliged to; but, when they failed to do so, they cannot say that, since the plaintiffs haven't shown it to you, they ought to be turned out of court."

[11] Another point earnestly pressed by defendant is an objection to that part of the charge wherein the court, after instructing that the jury could not award to plaintiffs any greater damages than they had actually suffered at the hands of defendant, said: "That is all that you have any right to award them, but they are entitled to that as near as you can determine, and if you come to a dividing line, we may say a twilight zone, where it is a little difficult to say where the line is, and I will admit it is difficult ordinarily, it will be your duty that you make certain that you give the plaintiffs what they have suffered. You can encroach a little on the side of the defendant in that twilight zone, because the confusion has been created by the defendants. It is their smoke coming in that caused the confusion and brought the case before you. * * * They have created the difficulty as much for the plaintiffs as for themselves, and to that extent they must bear a little of the burden of it, namely, when you come to determine how much damages were caused by smoke, and not by causes for which defendants were not liable, you

will go so far across the line that you will feel satisfied the greater weight of evidence is with plaintiffs with respect to the amount of their damages." The court added that the jury could not resort to mere conjecture or guesswork, but the amount of damages must be based on evidence that rationally and reasonably tends to support the amount.

Defendants cannot seriously urge that the verdict, which found as to each count, if sustainable at all, was excessive. It has very strong support in the evidence introduced by the plaintiffs. Defendant saw fit not to introduce testimony tending to contradict or weaken the estimates of damages and values made by plaintiffs' witnesses. That was its right, but, having taken that position on the trial, they cannot now well say that the jury, in the difficulties of working to a just result, encroached upon their rights. The reasonableness of the amounts awarded—a total of a little less than $5,000—shows accord with the evidence, and warrants the view that the jury understood by the court's charge no more than that, inasmuch as the defendants had brought about the situation, where it was hard to estimate damages with exactness, and had not produced evidence, in measuring damages they might award such liberal sums as the evidence of plaintiffs justified. Cal. Orange Co. v. Riverside, etc., 50 Cal. App. 522, 195 P. 694.

The foregoing views dispose of the main questions presented, and lead to the conclusion that the judgment should be affirmed.