SIGNAL MOUNTAIN PORTLAND CEMENT COMPANY v. BROWN et al.

SAME v. GODFREY et al.

SAME v. HAYS.

No. 9593.

Circuit Court of Appeals, Sixth Circuit.

Feb. 15, 1944.

472

Charles A. Noone, of Chattanooga, Tenn., for appellant.

P. H. Thach, of Chattanooga, Tenn. (Thach & Thach, of Chattanooga, Tenn., on the brief), for appellees.

Before HAMILTON, MARTIN, and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

In the trial together of five separate actions brought against the appellant, Signal Mountain Portland Cement Company, separate verdicts in three cases were awarded the respective plaintiffs (now appellees) for diminution in rental value of properties owned by them. In two cases, non-suits were taken at the end of the trial, after the court had indicated that the two particular cases should not be submitted to the jury.

The five original actions were brought in the Circuit Court of Hamilton County, Tennessee, and were separately removed by appellant to the United States District Court for Eastern Tennessee on the ground of diversity of citizenship. Each of the actions was based upon a declaration that the plaintiff, as home owner in an exclusive residential section on Signal Mountain overlooking Chattanooga, had been damaged in the enjoyment and use of his or her property and in the loss of rental value as a result of a nuisance maintained by appellant.

It was charged in all of the declarations that appellant, in the manufacture of Portland cement at its plant at the foot of Signal Mountain below the properties of appellees, had maintained since November, 1939, a nuisance in throwing out in a careless and reckless manner through smoke stacks large quantities of dust, ashes, powdered cement and smoke, which, permeating the pure mountain air, settled on the properties of appellees and deposited dirt and trash throughout their homes, with resultant injury to rugs, draperies, furniture and the like.

In each of its separate answers appellant denied generally the allegations of the declaration and stated that for some eighteen years its plant had been operated continuously, except when closed for lack of business; that, to minimize the escape of dust, soot and ashes, which cannot be wholly eliminated, standard equipment had been installed when the plant was constructed; that its business had been operated in the same manner as that of other up-to-date cement plants in the same section; that it had been guilty of no negligence but had used its property "in a manner and for the only purpose" to which it was adapted.

It was denied that the operation of appellant's business constituted a nuisance; on the contrary, appellant averred that the making of cement is a lawful business which could not be conducted by it on any other location without the abandonment of valuable property. The answer in each case asserted that when appellant began its operations, few, if any, houses or homes were in the neighborhood; and that during recent years appellees and other persons, with knowledge of the location of appellant's plant and of the existing conditions, had purchased property within possible range of slight portions of dust, soot

and ashes from plants operated by appellant and by others. These persons had voluntarily subjected themselves to slight annoyance on rare occasions; but such annoyance, if constituting damage, was said to be common to all persons living in the vicinity and to afford appellees no separate right of recovery.

The answer in each case set forth that lately the plant of appellant had been operated almost continuously in aid of national defense; that for several weeks prior to the institution of the suits, so little rain had fallen in the vicinity of Chattanooga that in all probability the dust, soot and ashes from its plant had ascended higher than at any time in the past. It was added that before this "combination of unavoidable circumstances," no complaint concerning the operation of its plant had ever been made to appellant.

The answer in each case declared that because of the elevation of appellee's property and its distance from appellant's plant, no dust therefrom "could reach the plaintiff's property, except possibly the very lightest dust, and that only in extremely dry weather and when the wind was from the southwest." The assertion was made that there is no continuous fall of dust but only an intermittent fall, if any, upon the premises of appellees.

It was not admitted, however, that any dust created by appellant ever reached the premises of the appellees; but the allegation was made that any dust, soot and ashes falling upon the property of appellees came from the commingling of such particles from appellant's plant with those produced by the operation of other plants, factories, foundries, railroads and railroad shops in the vicinity of Chattanooga; and that what proportion of dust, soot and ashes falling upon the premises of appellees was produced by appellant, and what proportion by other plants, was incapable of ascertainment.

In amended answers, appellant announced that it did not know at the time its plant was constructed that there existed an unusual air current around Signal Mountain which carried particles much higher and farther than normal air currents would have driven them. The knowledge of the existence of this unusual air current had come to appellant only recently; from which circumstance appellant insisted that it was not liable to appellees.

Pleas of the statute of limitation were incorporated in the amended answers upon the ground that appellant had operated its plant substantially as at present for more than eighteen years; and that any causes of action for damages accruing from its operation existed in predecessors in title to the appellees, and had long since been barred by Section 8598 of the Tennessee Code of 1932, which provides that actions for injuries to personal or real property shall be commenced within three years from the accrual of the cause of action.

Upon the trial together of the five cases, much testimony was adduced and many exhibits were received in evidence. It was proved that the appellees had all built their homes in 1939; and from this fact appellant presses its chief contention that the actions, having all been brought in June, 1941, are barred by the statute of limitations pleaded. Appellant insists that if its plant is a nuisance, it is a *permanent* nuisance, for which any right to sue accrued in favor of appellees' predecessors in title and has long since been barred by the three-year statute of limitation, such causes of action "not passing with the conveyances to the plaintiffs."

In support of the argument that if any nuisance resulted from its operations, such nuisance was *permanent,* appellant points to evidence that its plant operation began in 1923 and has continued since then at the same location; that the supply of needed raw material in the adjacent mountain is sufficient for many years of intended continued operation; that the plant when constructed was modern and has been so maintained; that the total cost of its plant investment is upward of four million dollars; that a standard dust-collecting system is in use; that the only superior type, the Cottrell System, is impracticable, would cost more than four hundred thousand dollars to install and would eliminate no appreciable quantity of dust to justify installation; and that, therefore, any injury to appellees is not "of such a nature as to be abatable, either by the expenditure of labor or money." Dodge, an expert witness introduced by appellant, admitted, however, that were the Cottrell System installed in appellant's plant, eighteen or nineteen tons of dust thrown out on the countryside could be collected over a period of 24 hours. If a true estimate, this would constitute a substantial reduction in dust distribution from the plant of ap-

474

pellant. Parcell testified that dust nuisance had been remedied in other places by the use of "some sort of an abater or apparatus."

Proof was introduced that only 25 of the 157 cement plants operated in the United States are equipped with the Cottrell System. The one witness, Uhlig, who had actual experience with the Cottrell System, expressed the opinion that the system would not prove "practical and efficient" in appellant's plant; and, indeed, would afford no added relief. The expert admitted, however, that under normal operating conditions the Cottrell System traps "from two-thirds to three-fourths of the total dust load."

It was shown that it is impossible to operate a cement plant without creating dust; and that the other five cement plants in Tennessee are not equipped with the Cottrell System, but use the same dust collecting system employed at appellant's plant. Colonel Weeks, formerly appellant's Assistant General Manager and Secretary, testified that while he lived on the mountainside five hundred feet *above* and one-half mile *from* the plant, he had the best roses on the mountain and that the dust affected his "wife's disposition more than it did anything else." There was substantial evidence, however, that cement dust from appellant's plant *was* deposited and accumulated on the properties of the appellees and did damage to furniture, draperies and rugs in their homes.

Upon conclusion of the introduction of their evidence, appellees elected "to sue for temporary damages instead of permanent damages." This action was taken to meet the motion of appellant made earlier that "the court designate whether or not this was a permanent or a temporary nuisance."

Appellant then moved for a directed verdict, first upon the ground that the cement plant, if any nuisance at all, was a permanent nuisance and being such, "the right to sue for damages, present and future, accrued when the nuisance first began to operate, and has long since been barred by the statute of limitations."

The district court overruled the first ground of the motion in view of the election of appellees to proceed on the temporary nuisance basis, and for the reason that there was "enough proof to go to the jury" on the issue of whether the nuisance was temporary or permanent.

Upon completion of the introduction of evidence in the case, appellant renewed its motion for directed verdict upon the same grounds, with the additional ground stated that appellees had suffered no damages, inasmuch as the proof was said to be uncontradicted that rental values of appellees' properties had increased during the three years immediately preceding the institution of their suit. The renewed motion was overruled and the case was submitted to the jury under a comprehensive and clear-cut charge.

The jury was charged that the burden rested upon plaintiffs to show by the greater weight of the evidence that the operation of the defendant's plant during the three-year period preceding the institution of the suits amounted to a nuisance whereby plaintiffs were damaged; that unless this burden had been carried by the plaintiffs, verdicts should be returned in favor of the defendant.

In homely fashion, the court correctly instructed the jury with respect to the doctrine, sic utere tuo ut alienum non laedas; not however expressed in that erudite ancient language, but more simply stated, no man may so use his own property as to injure that of his neighbor.

Further instruction was given that, as a predicate to liability, the jury must trace the unusual dust condition, if any, to the defendant; and that if dust from any other source substantially contributed to the annoyance of the plaintiffs, it could not be said that the nuisance was caused by the defendant.

With respect to the permanent or temporary character of the nuisance, the court charged that if the jury should find from the proof that there was a nuisance which could be abated by human labor and skill and at reasonable expense, it should be termed temporary; but if the jury should conclude from the proof that the nuisance could not be abated by human labor and skill, under reasonable conditions, then the nuisance should be termed permanent, and the jury should find in favor of the defendant.

The court carefully summarized the evidence emphasized respectively by the opposing parties, in support of their divergent contentions, and gave appropriate directions for the application of the law as charged to the facts found by the jury.

The measure of damages was charged to be the reduction in the rental value of the

properties of plaintiffs from such dust annoyance as was caused by the defendant, taking into consideration the quantity of dust, how much it affected the curtains, rugs, furniture and the like in the homes of plaintiffs, and also considering the proof with respect to "the up or down grade as to rents" generally during the three-year period involved. Direction was expressly given that only such damage could be considered as was inflicted within the three years immediately preceding the filing of the suits on June 6, 1941.

The jury returned verdicts against appellant for $950 in the Brown case, $1,140 in the Godfrey case, and $1,425 in the Hays case. Nonsuits had been voluntarily taken in the other two cases, namely, the Merriam and White cases.

 No error inheres in the refusal of the District Court to direct verdicts in favor of the defendant. Whether the nuisance created by appellant was permanent or temporary was, in each case submitted, a question of fact for the jury upon the entire evidence introduced. In our judgment, moreover, the charge of the trial court in its entire content conformed to Tennessee law, which is the controlling substantive law of the case, except that in one respect, as hereinafter observed, the charge was more favorable to the defendant than was justified.

 Perhaps the outstanding nuisance case in Tennessee jurisprudence is Ducktown Sulphur, Copper & Iron Co., Ltd., v. Barnes, 60 S.W. 593, in which the State Supreme Court adopted in entirety the opinion of the Court of Chancery Appeals and affirmed its decree, with modification only as to a minor particular with respect to the basis for damages to growing crops. It was held that where smoke and noxious gases from smelting works injured the property and endangered the health of adjoining land owners an action for damages would lie, even though the business of the defendant was conducted in a suitable locality with the most approved appliances and furnished employment, directly or indirectly, to nearly the whole community.

This doctrine was approved by the Supreme Court of Tennessee in Swain v. Tennessee Copper Co., 111 Tenn. 430, 437, 78 S.W. 93, wherein Judge Shields quoted from page 600 of 60 S.W., of the "able opinion" in the Ducktown case, supra, in which may be found an elaborate historical discussion of the application of the principle, sic utere tuo ut alienum non laedas.

Madison v. Ducktown Sulphur Copper & Iron Co., Limited, 113 Tenn. 331, 357, 358, 83 S.W. 658, 664, recognized that a judgment for damages in this class of nuisance cases is a matter of absolute right, where injury is shown. The court declared that the existence of another nuisance of similar character at the same place furnishes no ground for denial of relief where it appears that the defendant "has sensibly contributed to the injury complained of." It was added that the question is not one of care and skill, "but purely one of results."

In Terminal Co. v. Lellyett, 114 Tenn. 368, 388, 389, 400, 85 S.W. 881, 886, the following portion of the charge of the trial court, described as taken from the opinion in Ducktown Sulphur, Copper & Iron Co. v. Barnes, supra, was approved: "I instruct you that it is no defense to this action to prove that the yards where the business of defendants is carried on is at a suitable locality, or that the business is a lawful business and one useful to the public, or that the best and most approved appliances and methods are used in the conduct and management of the business. Where a trade or business is carried on in such manner as to interfere with the reasonable and comfortable enjoyment of another of his property, or which occasions material injury to the property itself, it amounts to a wrong to the neighbor, and one for which an action will lie."

In the opinion in the Lellyett case, supra, much emphasis was placed upon the decision of the Supreme Court of the United States in Baltimore & P. R. R. v. Fifth Baptist Church, 108 U.S. 317, 2 S.Ct. 719, 27 L.Ed. 739, from which liberal quotations were made (114 Tenn. 394, 395, 396, 85 S. W. 887, 888), including the following (108 U.S. 334, 2 S.Ct. page 730, 27 L.Ed. 739): "If, as asserted by the defendant, the noise, smoke, and odors, which are the cause of the discomfort and annoyance to the plaintiff, are no more than must necessarily arise from the nature of the business carried on with an engine-house and work-shop as ordinarily constructed, then the engine-house and work-shop should be so remodelled and changed in their structure as to prevent, if that be possible, the nuisance complained of; and if that be not possible, they should be removed to some other place where, by their use, the plaintiff

would not be thus annoyed and disturbed in the enjoyment of its property."

■ The argument of appellant that the instant actions are barred by the statute of limitation seems diametrically opposed by the decision of the Supreme Court of Tennessee, in an opinion by Judge Lurton in City of Nashville v. Comar, 88 Tenn. 415, 426, 12 S.W. 1027, where it was held that *when the cause of an injury is abatable, either by the expenditure of labor or money, it will not be held permanent or irremediable;* for, otherwise, wrong would be licensed and a wrongdoer could appropriate to his own use the property of another. The opinion places no limitation upon the amount of money which may be required to be expended in order to abate the nuisance. The charge of the trial court, therefore, stated appellant's case more favorably than was justified under this authority, and under Terminal Company v. Lellyett, supra.

■ With respect to the measure of damages, the District Court's charge was in consonance with the Tennessee authorities. In Terminal Co. v. Lellyett, 114 Tenn. 368, 404, 85 S.W. 881, the measure of damages to property from a temporary nuisance is declared to be "the injury to the value of the use and enjoyment, which may be measured, to a large extent, by the rental value of the property, and to what extent that rental value is diminished." See, also, City of Murfreesboro v. Haynes, 18 Tenn. App. 653, 657, 82 S.W.2d 236, in which a petition for certiorari was denied by the State Supreme Court.

In City of Nashville v. Comar, supra [88 Tenn. 415, 12 S.W. 1030], it was declared that where the cause of an injury is one "not presumed to continue," the damages recoverable from the wrongdoer are only such as have accrued before the action was brought; and that successive actions may be brought for the subsequent continuance of the wrong or nuisance.

The opinion in Ducktown Sulphur, Copper & Iron Co., Ltd., v. Barnes, supra, stated that the fact that the maintenance of a nuisance enhanced the value of adjoining property cannot be considered in abatement of the damages to be awarded a neighboring owner.

■ No merit is found in appellant's contention that the district court erred in declining its request to incorporate in the charge to the jury two special instructions pertaining to "efficient intervening cause"

The granting of these requests would have been in contravention of the law as declared in the Tennessee authorities heretofore discussed on the point of liability for maintaining a nuisance.

The consideration of authorities from outside Tennessee on the substantive law of this case would be fruitless. There is a wide range of disparity in the decisions, especially concerning the distinction between permanent and temporary nuisances (39 Am.Jur., Secs. 131, 132, 133); and the law of Tennessee governs.

■ Inasmuch as we have concluded that these causes must be retried, we have discussed the principles of Tennessee law applicable to the facts in the record for clarification of controversial issues presented on these appeals and for guidance of the district court upon the retrial of the cases. Reversible error was clearly committed in the limitation of appellant to three peremptory challenges in the trial together of the five cases, brought by separate plaintiffs for separate causes of action.

■ No signed order consolidating the cases for trial was entered in the court below. We must, therefore, look to the transcript of the testimony and trial proceedings. It is there recited that "the above styled causes came on for hearing" before the district judge and a jury; and that "on the trial of the causes the following proceedings were had and evidence adduced." The plural word, "causes," is used twice. From the transcript it appears, moreover, that the attorney for the five plaintiffs stated his "willingness to proceed with the trial of all five of the cases together." This permits no stronger inference than that the cases were to be tried together for convenience and saving of time and expense. That the five cases were not actually consolidated into one cause is further evidenced from the record, which shows that the pleadings, motions, orders, verdicts, judgments, motions for new trials and supersedeas bonds were separately drawn, filed or entered.

■ The following narrative appears in the Supplemental Record, certified by the district court as properly to be included and evidently omitted from the original record through oversight: "While the jurors were being examined, the court announced that the plaintiffs and defendant would be allowed three peremptory chal-

lenges, the cases having been consolidated. The juror Hilton was tendered. Defendant had used the three peremptory challenges, and its counsel was in the act of challenging the juror Hilton, when the court informed counsel that he had exhausted his challenges. Defendant's counsel stated to the court that in view of the Supreme Court decisions he was entitled to fifteen peremptory challenges. Thereupon, the court ruled that the defendant was entitled to only three peremptory challenges, and Hilton was thereupon accepted as a juror, attorney for the defendant stating 'that it would make no further contention as to the juror, and in that manner accepted him,' although it was not defendant's wish to do so. *Over exception of defendant, Hilton was accepted as a juror."* (Italics supplied.)

Contrary to the argument of appellees, the exception to the ruling of the district court on the challenge of the juror was sufficiently taken by appellant to preserve the point on appeal. See Rule 46, Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c.

Under the rule established in this circuit, appellant was plainly entitled to challenge the juror; and the denial of that right by the district court constituted reversible error.

In Davis v. Jessup, 6 Cir., 2 F.2d 433, 434, this court reversed and remanded three cases for new trials, for the reason that the district court had denied to the defendant more than three peremptory challenges as against its claim to three for each of the three cases which, though tried together, were not consolidated into a single action. The opinion writer declared: "It is clearly settled that the plaintiff in each of several cases not consolidated, but, because of a common defendant, tried together, is entitled to three peremptory challenges. Mutual Life Insurance Co. v. Hillmon, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706. We concur in the views expressed by the majority of the court in Betts v. U. S. 132 F. 228, 65 C.C.A. 452 (C.C.A. 1) ; and a majority of this court agrees with the unanimous opinion in Butler v. Evening Post Publishing Co., 148 F.2d 821, 78 C.C.A. 511, (C.C.A. 4), certiorari denied 204 U.S. 670, 27 S.Ct. 785, 51 L.Ed. 672, that the single defendant under like circumstances is entitled to the same number of challenges as all of the plaintiffs.". It was stated that in the opinion of the majority of the court, Connecticut Mutual Life Insurance Co. v. Hillmon, 188 U.S. 208, 23 S.Ct. 294, 47 L. Ed. 446, is not to the contrary. It was said, moreover, that in the opinion of the majority of the court, the defendant need not designate the case to which each peremptory challenge is to apply, at the risk of having each challenge construed as applying to each case. No dissenting opinion was filed; indeed, no dissent was noted. Davis v. Jessup, supra, is presently approved and will govern decision here. No elaboration seems necessary.

Suffice it to say that the Ninth Circuit Court of Appeals, in United Verde Copper Co. v. Jordan, 14 F.2d 299, 301, 302, approved the interpretation in Davis v. Jessup, of the two Hillmon cases, supra. It was held that where separate actions were brought by the same plaintiffs against two defendants and were tried together with the requirement of separate verdicts, each defendant was entitled, under Section 287 of the Judicial Code, 28 U.S.C.A. § 424[1] to the same number of peremptory challenges as though the cases had been tried separately.

Consideration of the assignment of error with respect to alleged misconduct of the juror, Hilton, becomes immaterial.

Upon the sole ground of its ruling with respect to the permissible peremptory challenges, the judgment of the district court entered upon the verdict of the jury in each of the three appealed cases is reversed; and the three causes are remanded to the district court for retrial.

[1] Sec. 287 of Judicial Code, 28 U.S.C.A. § 424. "* * * in al other cases, civil and criminal, each party shall be entitled to three peremptory challenges; and in all cases where there are several defendants or several plaintiffs, the parties on each side shall be deemed a single party for the purposes of all challenges under this section. * * *"